UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Darryl Glenn,<br><br>    Debtor. | Case No. 14bk31070<br><br>Chapter 13<br><br>Judge Timothy A. Barnes |
| Darryl Glenn,<br><br>    Plaintiff,<br><br>v.<br><br>Cavalry Investments LLC,<br><br>    Defendant. | Adversary No. 15ap00560 |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION

The matter before the court arises out of the Motion to Dismiss Adversary Proceeding [Adv. Dkt. No. 15] (the "Motion to Dismiss") filed by Cavalry Investments, LLC ("Cavalry"),[1] seeking dismissal of the Adversary Complaint Objecting to Proof of Claim and for Damages for Violation of the Fair Debt Collection Practices Act and for Fraud on the Court [Adv. Dkt. No. 1] (the "Complaint"), filed by Darryl Glenn (the "Debtor").

The Complaint asserts a recent *cause célèbre* in the bankruptcy courts,[2] that the filing in a bankruptcy proceeding of a proof of claim on account of a time-barred debt violates the Fair Debt

---

[1]    There is some confusion as to whether the defendant is "Cavalry Investments, LLC" or "Calvary Investments, LLC." As named in the Complaint, it is the former. In the Motion to Dismiss, Cavalry names itself as the latter in the case caption itself but the former throughout. Given the naming in the Complaint and that the predominate usage in Motion to Dismiss are in accord (and given that no party has claimed that the defendant is misidentified in the Complaint), the court will use the former, "Cavalry Investments, LLC," as the formal name of the defendant (Cavalry, for short) herein.

[2]    The bankruptcy legal community is large but close knit. What one attorney succeeds on is quickly attempted in numerous other cases. Such was the case in how the self-styled "limited" ruling in *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594, 2620 (2011) ("Congress, *in one isolated respect*, exceeded that limitation in the Bankruptcy Act of 1984.") (emphasis added), conflated to thousands of disputes. *See, e.g., KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 898 n.2 (Bankr. N.D. Ill. 2012) (Barnes, J.) (observing that nearly 600 published decisions resulted in the first year following *Stern*

Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"), and thus is not only sanctionable, but fraudulent.

This question, whether the filing of a proof of claim on account of a time-barred debt violates the FDCPA, is presently under consideration by the United States Court of Appeals for the Seventh Circuit. *See, e.g., Owens v. LVNV Funding*, Appeal No. 15-2044 (7th Cir. filed May 13, 2015). In many instances, as a result, the parties have asked this court to stay ruling pending the Seventh Circuit's decision. In this matter, however, the parties have requested that the court rule. Given that the Seventh Circuit has not yet ruled on this specific issue, therefore, the court is left with making its way through the extant law.

That law is becoming voluminous. In this district alone, a number of recent cases have come down, and those cases are fairly split on the question. *Compare Robinson v. eCast Settlement Corporation*, Case No. 14cv8277, 2015 WL 494626, at *3-4 (N.D. Ill. Feb. 3, 2015) (Shah, J.) (holding that such FDCPA claims fail to state a claim); *Murff v. LVNV Funding, LLC (In re Murff)*, Case No. 13bk44431, Adv. No. 14ap00790, 2015 WL 3690994, at *5 (Bankr. N.D. Ill. June 15, 2015) (Goldgar, J.) (same); *LaGrone v. LVNV Funding LLC and Resurgent Capital Services (In re LaGrone)*, 525 B.R. 419, 425-26 (Bankr. N.D. Ill. 2015) (Wedoff, J.) (same) *with Taylor v. Galaxy Asset Purchasing, LLC*, Case No. 14cv09276, ___ F. Supp.3d ___, 2015 WL 3645668, at *2-3 (N.D. Ill. June 11, 2015) (Darrah, J.); *Reed v. LVNV Funding, LLC*, Case No. 14cv8371, 2015 WL 1510375, at *4-5 (N.D. Ill. Mar. 27, 2015) (Bucklo, J.); *Taylor v. Midland Funding, LLC*, 94 F. Supp.3d 941, 947 (N.D. Ill. 2015) (Guzman, J.); *Davenport v. Cavalry Investments, LLC (In re Davenport)*, Case No. 14bk30261, Adv. No. 15ap00559, 2015 WL 8746384, at *2-3 (Bankr. N.D. Ill. Dec. 14, 2105) (Doyle, J.) (holding that there is or may be a justiciable legal claim); *Edwards v. LVNV Funding, LLC and Resurgent Capital Services, LP (In re Edwards)*, 539 B.R. 360, 367 (Bankr. N.D. Ill. 2015) (Doyle, J.) (same); *Avalos v. LVNV Funding, LLC (In re Avalos)*, 531 B.R. 748, 756-57 (Bankr. N.D. Ill. 2015) (Schmetterer, J.) (same); *Brimmage v. Quantum3 Group LLC and Elite Recovery Acquisition, LLC (In re Brimmage)*, 523 B.R. 134, 142 (Bankr. N.D. Ill. 2015) (Cox, J.) (same).

Outside of this district but still within the Seventh Circuit, the courts are also split on the question. *Compare Donaldson v. LVNV Funding, LLC*, 97 F. Supp. 3d 1033, 1039-40 (S.D. Ind. 2015) (proofs of claims that do not misrepresent time-barred debt are not misleading) *with Patrick v. PYOD, LLC, Resurgent Capital Services, LP*, 39 F. Supp. 3d 1032, 1036 (S.D. Ind. 2015) (even proofs of claims that do not misrepresent time-barred debt are misleading); *In re Sekema*, 523 B.R. 651, 654-55 (Bankr. N.D. Ind. 2015) (sanctioning a creditor for filing a claim on a time-barred debt).

Going even further afield, one quickly sees that the issue is a national one, and that the courts are equally divided outside of the Seventh Circuit. *Compare Simons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2nd Cir. 2010) ("The FDCPA is designed to protect defenseless debtors and to give

---

alone). Such is the case here. It isn't clear how the practice of bringing FDCPA claims in this context began, but there is no question that has caught on. On April 16, 2015, for example, the Chicago Bar Association held a seminar for the express purpose of training attorneys on how to bring FDCPA claims in bankruptcy entitled "Statute of Limitations on Debt Collection & More." Calendar of Events, CHICAGO BAR ASSOC., http://www.chicagobar.org/source/Meetings/cMeetingFunctionDetail.cfm?section=Calendar&product_maj or=C13315W&functionstartdisplayrow=1 (last visited December 29, 2015). This judge alone heard five other complaints and motions to dismiss predicated on the same arguments the day argument on this matter was held.

2

them remedies against abuse by creditors. There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself."); *Gatewood v. CP Medical, LLC (In re Gatewood)*, 533 B.R. 905, 910 (B.A.P. 8th Cir. 2015) ("The FDCPA does not prohibit *all* debt collection practices. Instead, it simply prohibits false, misleading, deceptive, unfair, or unconscionable debt collection practices."); *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 241 (B.A.P. 9th Cir. 2008) ("[W]e are convinced that the Code and Rules are up to the task of compensating a debtor for any damages or costs occasioned by, and to punish and deter, those who would abuse the bankruptcy claims process.") *with Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1261-62 (11th Cir. 2014) (The "filing of a time-barred proof of claim against [the debtor] in bankruptcy was 'unfair,' 'unconscionable,' 'deceptive,' and 'misleading' within the broad scope of § 1692e and § 1692f [of the FDCPA].").

Thus, as it stands now, neither direct authority on point nor a clear majority rule exists. With this in mind, the court considers the matter at bar.

A.   Background

The facts in this matter, insofar as they relate to the Motion to Dismiss, are not in dispute.[3] The Debtor is a natural person who resides in Chicago, Illinois. On August 25, 2014 (the "Petition Date"), the Debtor voluntarily commenced, under chapter 13 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (2012, as amended) (the "Bankruptcy Code"), the above-captioned bankruptcy case.

In the Debtor's bankruptcy case, a deadline for the submission of claims (the "Bar Date") was set for February 17, 2015. Notice of the Bar Date was generated on August 26, 2014, by way of the "Notice of Commencement of Case Under the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates." Official Form 9I [Dkt. No. 8] (the "Bar Date Notice").[4] A copy of the Bar Date Notice was sent electronically to Cavalry on August 27, 2014. BNC Certificate of Notice [Dkt. No. 10].

On August 26, 2014, Cavalry filed its Proof of Claim on Official Form 10.[5] In the addenda to the Proof of Claim, Cavalry clearly set forth the criteria required by Rule 3001 of the Federal

---

[3] "When evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010), *as amended* (Dec. 16, 2010). A court may also "take judicial notice of facts not alleged in the complaint in certain circumstances." *Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Delaware, Inc.)*, 541 B.R. 219, 234 (Bankr. D. Del. 2015).

[4] All of the official forms governing at that time have since been superseded by new forms made effective on December 1, 2015. New Official Form 309I, the form superseding Official Form 9I, while substantially different in appearance, has not changed in any way material to this matter.

[5] The timing of the Bar Date Notice's mailing in relation to the filing of the Proof of Claim is problematic. While it is true that Cavalry was sent the Bar Date Notice, this appears to have been a result of its own filing of the Proof of Claim a day earlier. While the court can find no indication that Cavalry or the parties from who Cavalry took an assignment of the debt in question were included in the Debtor's Official Form 6F (Creditors Holding Unsecured Nonpriority Claims) or otherwise in the Debtor's filings, the court has also not been provided an explanation of how Cavalry would otherwise have known about the Debtor's bankruptcy in time to file a Proof of Claim only one day after the case's commencement.

Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and as to a specific Bankruptcy Rule, "Bankruptcy Rule ____"), including the specific requirements of Bankruptcy Rule 3001(c)(3). This subsection requires detailed information in relation to open-end or revolving consumer credit agreements. The legislative notes to this subsection state that:

> Except with respect to claims secured by a security interest in the debtor's real property (such as a home equity line of credit), paragraph (3) specifies information that must be provided in support of a claim based on an open-end or revolving consumer credit agreement (such as an agreement underlying the issuance of a credit card). Because a claim of this type may have been sold one or more times prior to the debtor's bankruptcy, the debtor may not recognize the name of the person filing the proof of claim. Disclosure of the information required by paragraph (3) will assist the debtor in associating the claim with a known account. *It will also provide a basis for assessing the timeliness of the claim.* The date, if any, on which the account was charged to profit and loss ("charge-off" date) under subparagraph (A)(v) should be determined in accordance with applicable standards for the classification and account management of consumer credit.

Fed. R. Bankr. P. 3001(c) advisory committee's note to 2012 Amendment II (emphasis added). Official Form 10, the Proof of Claim form, provides specific instructions regarding compliance with Bankruptcy Rule 3001(c).

Among the information contained in Cavalry's Proof of Claim, as required by Bankruptcy Rule 3001, was that the last activity on the account was May 24, 2002 and that the account had been charged off on October 21, 2002, each more than ten years prior to the Petition Date. The amount claimed by Cavalry was $359.16.

On December 8, 2014, the court entered an order confirming the Debtor's chapter 13 plan [Dkt. Nos. 17 and 9, respectively]. While the plan did not provide for treatment of the Cavalry Proof of Claim specifically, Section E.8 of the plan did provide for a modest recovery to allowed general unsecured claims.

On July 7, 2015, the Debtor objected to Cavalry's Proof of Claim [Dkt. No. 22] (the "Objection").[6] While the Objection made broad-sweeping allegations regarding the state of the time-bar on the debt underlying Cavalry's claim, Cavalry did not respond to the Objection or appear at the hearings on the Objection held on August 17, 2015 and August 31, 2015. On August 31, 2015, the court entered an order sustaining the Debtor's Objection to Cavalry's Proof of Claim [Dkt. No. 27].

On August 6, 2015, before the Objection was heard, the Debtor commenced the above-captioned adversary and one materially identical adversary against another creditor, LVNV Funding, LLC. On October 8, 2015, Cavalry filed the Motion to Dismiss. On October 16, 2015, the Debtor filed Plaintiff's Response to Motion to Dismiss [Adv. Dkt. No. 16], and after an initial hearing and

---

[6]     Despite being titled Motion to Disallow Claim, in Part, the Objection sought to disallow Cavalry's Proof of Claim in its entirety.

the entry of a scheduling order [Adv. Dkt No. 20], Cavalry's Reply in Further Support of Its Motion to Dismiss Adversary Proceeding [Adv. Dkt. No. 21] was filed on November 5, 2015.

The Motion to Dismiss is, therefore, fully briefed. Counsel to the Debtor and counsel to Cavalry appeared on November 18, 2015 and again on December 17, 2015 on the fully briefed Motion to Dismiss, where both parties argued their positions extensively.

B.      The Complaint

The Complaint in this matter pleads in three counts. Count I argues that the filing of the Proof of Claim by Cavalry violates §§ 1692e and 1692f of the FDCPA. Count II asserts that the filing of the Proof of Claim with actual knowledge that the debt referenced therein was barred by Illinois' statute of limitations constitutes a fraud on the court. Count III asserts merely that the Proof of Claim should be disallowed pursuant to Bankruptcy Rule 3007.

As noted above, Count III of the Complaint has been resolved by other means. On July 7, 2015, the Debtor filed its Objection to Cavalry's Proof of Claim. Cavalry did not respond or appear at the hearings on the Objection held on August 17, 2015 and August 31, 2015. On August 31, 2015, the court entered an order sustaining the Debtor's Objection. As a result, Count III of the Complaint will be dismissed with prejudice.

C.      The Motion to Dismiss

Cavalry's Motion to Dismiss raises a number of issues. First and foremost, Cavalry argues that the Complaint is precluded by the confirmation of the Debtor's chapter 13 plan and the application of *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000), which held that the confirmation of a plan wherein a creditor's claim was allowed precluded the bringing of an FDCPA claim in another court nearly a year later. Second, Cavalry argues that the FDCPA is precluded by the Bankruptcy Code and that allowing nonbankruptcy courts to hear FDCPA claims arising from the filing of proofs of claims violates federal law. Third and last, Cavalry argues that the filing of the Proof of Claim was not abusive or deceptive and is not a fraud on the court.

The third contention, and the due process concerns appurtenant to the Debtor's contentions, drew the majority of the parties' attention at oral argument. That discussion, therefore, will draw the majority of the court's analysis. After considering the standards applicable to the Motion to Dismiss, the court will take up each of these issues in turn.

Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As this court has stated:

> A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing sufficiency, the court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the

5

> allegations in the plaintiff's favor." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

*Muhammad v. Reed (In re Reed)*, 532 B.R. 82, 87-88 (Bankr. N.D. Ill. 2015) (Barnes, J.). As has been noted by the court in earlier cases, that the complaint must state a plausible claim means that the allegations must raise the plaintiff's right to relief above a "speculative level." *Brandt v. PlainsCapital Leasing, LLC (In re Equip. Acquisition Res., Inc.)*, 502 B.R. 784, 791 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Twombly*, 550 U.S. at 570). Thus "the standard for evaluating the sufficiency of the complaint is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Anchorbank*, 649 F.3d at 614 (citation omitted); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).

> But even when there is fair notice and a plausible claim, a complaint will be dismissed when the facts alleged state no claim as a matter of law. Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). If "as a matter of law it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Id.* at 327 (internal quotation and citation omitted); *see also Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *Quinones ex rel. Quinones v. Ariezaga*, No. 07-CV-0004, 2008 WL 907442, at *3 (N.D. Ill. Mar. 31, 2008); *Schaul v. Ludwig (In re Ludwig)*, 508 B.R. 48, 53 (Bankr. N.D. Ill. 2014).

*Murff*, 2015 WL 3690994, at *3.

The foregoing makes clear that, should the court find that the Debtor has failed, as a matter of law, to state a claim cognizable under existing law, the Complaint should be dismissed. With that concept firmly in mind, the court now turns to Cavalry's arguments.

1. *Adair v. Sherman*

As noted above, Cavalry argues that the Complaint is precluded by the confirmation of the Debtor's chapter 13 plan and the application of *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000).

In *Adair*, the Seventh Circuit considered whether an FDCPA claim brought by a previously bankrupt debtor could survive the confirmation of that debtor's bankruptcy plan and the treatment of the defendant's claim therein as allowed. *Id.* at 894. Specifically, the debtor had sought chapter 13 bankruptcy relief in 1997. In his bankruptcy case, a law firm filed on behalf of a secured creditor a proof of claim, and that proof of claim was not objected to.[7] Later that same year, the debtor's bankruptcy plan was confirmed. *Id.*

Nearly a year later, the debtor brought an independent action in the District Court claiming that the law firm routinely overstated claims, and that that was a violation of the FDCPA. The District Court dismissed the action and the Seventh Circuit affirmed. *Id.*

---

[7]   The debtor did attempt to challenge the proof of claim by bringing an adversary after the confirmation of the plan, but that adversary was dismissed when the debtor's bankruptcy case was also dismissed.

6

In affirming the District Court, the Seventh Circuit held that issue preclusion applied. It viewed the debtor's FDCPA action as a collateral attack on the claim's allowance. *Id.* at 894. Specifically, the Seventh Circuit held the debtor was "attempting to use an FDCPA claim to attack the existence of the underlying debt, a matter already determined definitively in the bankruptcy proceeding." *Id.* at 896. The Circuit was careful to say that the claim was precluded because, as framed by the debtor, the FDCPA claim was merely a contest to the amount of the debt, a matter determined previously in the bankruptcy process. *Id.*

In arguing that *Adair* applies to the case at bar, Cavalry mistakes the import of the Seventh Circuit's holding. Nothing in *Adair* stated that a creditor could not bring an FDCPA claim postconfirmation. In fact, the Seventh Circuit took great pains to make clear that its holding was due to the way the FDCPA issue was framed, as a collateral attack to the claim's allowance. *Id.*

In fact, in *In re Hovis*, 356 F.3d 820 (7th Cir. 2004), the Seventh Circuit went to further lengths to make sure that *Adair* was not misunderstood. In *Hovis*, the Circuit pointed out that in *Adair*, the debtor was attempting in a separate proceeding to challenge the results of a bankruptcy case. That, the Circuit made clear, is not permissible. *Id.* at 822. Within the bankruptcy case, however, "issue preclusion has no role." *Id.* As *Hovis* made clear (and as, in fact, occurred here),[8] even after the confirmation of a debtor's plan, the court is free to hear and rule on objections to such claims. *Id.*

As the matter here is part of the Debtor's bankruptcy case (or at the very least is contiguous with that case) and is brought in the bankruptcy court, the court finds that *Adair* is inapplicable. The court therefore agrees with *Davenport* that this argument has no merit. *Davenport*, 2015 WL 8746384, at *3. For this reason, Cavalry's Motion to Dismiss is denied to the extent it relies on *Adair*.

2.  *Neither the FDCPA nor the Bankruptcy Code Precludes the Other*

Similarly, the court agrees with *Davenport* that Cavalry's argument that the terms of the Bankruptcy Code preclude the application of the FDCPA has no merit. *Id.* at *2.[9]

---

[8] As previously noted, the Debtor filed its Objection to Cavalry's Proof of Claim before the commencement of this Adversary and has since been sustained. Cavalry failed to appear and defend the Objection. While the Objection was filed, heard and determined after the confirmation of the Debtor's bankruptcy plan, that is expressly permitted by *Hovis*. *Hovis*, 356 F.3d at 822; *cf. Herrera v. JPMorgan Chase Bank, N.A., et al. (In re Herrera)*, 369 B.R. 395, 401 (E.D. Wis. 2007) ("Neither the Bankruptcy Code nor Bankruptcy Rules contain a bar date or deadline for filing objections to claims in a chapter 13 case and we will not read one into the law where none exists.") (*citing Hovis*, 356 F.3d at 822).

[9] The court groups together with this argument Cavalry's argument relating to the constitutionality of allowing nonbankruptcy courts to consider FDCPA claims relating to bankruptcy conduct. That issue is not before the court. The claim in question was brought in a bankruptcy court and any attempt to address the constitutionality of the claim being brought elsewhere would be advisory, at best. This court has no jurisdiction to issue advisory opinions. *In re FedPak Sys., Inc.*, 80 F.3d 207, 211-12 (7th Cir. 1996) ("A bankruptcy court, like any other federal court, lacks the constitutional power to render advisory opinions or to decide 'abstract, academic, or hypothetical questions.'") (*quoting 1819, Ltd. v. Florida Dept. of Rev. (In re Inn on the Bay, Ltd.)*, 154 B.R. 364, 367 (Bankr. S.D. Fla. 1993)).

As noted in *Davenport*, the Seventh Circuit has already addressed and rejected similar arguments. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004) ("The Bankruptcy Code of 1986 does not work an implied repeal of the FDCPA, any more than the latter Act implicitly repeals itself."). In *Randolph*, the Seventh Circuit made clear that the Bankruptcy Code can be read in conjunction with the FDCPA. *Id.* at 732 ("They are simply different rules, with different requirements of proof and different remedies."). As such, the Bankruptcy Code does not repeal, preclude, supersede or otherwise render meaningless or unenforceable the provisions of the FDCPA. *Id.*; *Davenport*, 2015 WL 8746384, at *2. For that reason, mere compliance with the Bankruptcy Code or Bankruptcy Rules is not enough to give shelter from FDCPA claims.

But for the same reasons, nor can the FDCPA render the Bankruptcy Code meaningless. This conclusion is particularly important when considering that it is the Bankruptcy Code, not the FDCPA, that protects the due process rights of the holder of a claim.

What this means, of course, is that the court must make an independent determination of whether the conduct of the defendant in filing a proof of claim on account of a time-barred debt falls within the auspices of conduct sanctionable under the FDCPA. Or put another way, facts matter. As such, it remains incumbent upon the court to consider the last of Cavalry's arguments.

3. *The Filing of the Proof of Claim and the FDCPA*

The last of Cavalry's arguments, and the prevailing one, is that the mere filing of a proof of claim on a time-barred debt, with nothing more, is neither sanctionable under the FDCPA nor as a fraud on the court under Bankruptcy Rule 9011.

The Debtor would have the court find that the filing of a proof of claim on a time-barred debt is a violation of the FDCPA *per se*. As has been noted by this court in the past, such *per se* rules lead to unenviable results, and should be approached with caution. *Molfese v. Bonomi (In re Bonomi)*, Case No. 11bk26652, Adv. No. 13ap00119, 2014 WL 640982, at *8 (Bankr. N.D. Ill. Feb. 18, 2014) (Barnes, J.) ("What one court rules in isolation should only cautiously and after great inquiry be applied in a broader perspective. If rules established in isolation that appear to dictate a result *per se* do anything in such circumstances, it would be to establish at most, a rebuttable presumption in favor of the *per se* result. There must always be some room for the trial court to apply the underlying statute itself."). Establishing a *per se* rule such as the Debtor espouses is a trap that other courts have fallen into. *See, e.g., PYOD, LLC*, 39 F. Supp.3d at 1036 (even proofs of claims that do not misrepresent time-barred debt are misleading); *see also, e.g., Chaussee*, 399 B.R. at 241.

To be clear, much of the analysis that leads to such conclusions has been done previously by the Seventh Circuit when it concluded that the filing of a lawsuit on a time-barred debt is a violation of the FDCPA. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013) ("[T]he debt collection suits against the class members were time-barred and hence violated the Fair Debt Collection Practices Act."). That is unquestionably a *per se* rule (and one binding on this court), and the courts in this jurisdiction that have treated it as such are clearly not wrong. The circumstances here, however, are different from *Phillips*, and require further examination.

      a.      The Bankruptcy Claims Process Is Different Than a Creditor-Commenced Lawsuit

It is true that there are similarities between lawsuits and claims. The filing of a proof of claim is often likened to the filing of a complaint. *In re Residential Capital, LLC*, 524 B.R. 465, 477 (Bankr. S.D.N.Y. 2015). Also true is that an objection to claim is, in essence, waivable and, like a statute of limitations affirmative defense, if not asserted may result in collection by the creditor on the subsequently allowed claim. *Avalos*, 531 B.R. at 756 & n.1. And, one of the driving considerations of *Phillips* also exists here: that unsophisticated, *pro se* defendants (here, debtors) may be unaware of their rights and take the filing of the claim to be something more than it is. But the similarities, for the most part, end there.

No matter how enticing the arguments to the contrary, adopting a bright-line rule that excludes some creditors from participating in bankruptcy serves no one, and is both generally and specifically harmful to the case. Above all, bankruptcy is a collective process, designed to gather together the assets and debts of the debtor and to effect an equitable distribution of those assets on account of the debts. *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989). The more participation there is; the better this process works. It has often been the case in this court, for example, that through the claims and other activities of creditors a trustee discovers undisclosed assets.

Further, this is not the case of the debtor being dragged into a process by the creditor. The debtor was not forced from the comfort of his home to respond to egregious tactics by the creditor. Nor was the debtor hounded into bankruptcy, only to be met with a claim by the very party who forced the case to be filed. No evidence of any such actions exists here. In fact there is no allegation other than those set forth above, and those make clear that when the Debtor commenced a bankruptcy case, Cavalry did nothing other than respond.

In the law, as in sport, affairs of the heart and other endeavors, the rules of defense apply differently than the rules of offense … for good reason. The defender is generally afforded greater latitude in its actions to protect itself from the aggression of the offender. But here, who is on offense and who is on defense is not clear. Yes, as noted above, the filing of a proof of claim is akin to the filing of a complaint. That would put the creditor on offense. But the proceeding as a whole is one, if not commenced involuntarily, that is brought by the debtor. It is the debtor that is seeking the affirmative result – the discharge of debts. The debtor commenced the case, and by so doing, initiated a process by which creditors are expected to participate or to lose or accede to the debtor's characterization of their rights. *E.g.*, Fed. R. Bankr. P. 3003(a)(1) ("The schedule of liabilities filed [by the debtor] pursuant to § 521(l) of the Code shall constitute *prima facie* evidence of the validity and amount of the claims of creditors …."). Should a creditor sit back and do nothing, its rights are at severe risk.

Unlike in *Phillips*, the filing of a proof of claim does not in any way imply the absence of a statute of limitations defense for the simplest of all possible reasons: neither state statutes of limitations nor the Bankruptcy Code bars the filing of these claims. A creditor holding a time-barred debt who commences a lawsuit of course sends the message that it is entitled to do so, but in actuality it is not. *Phillips* recognizes that and treats it appropriately. A creditor filing a claim also sends the message that it is entitled to do, and it is. These are materially different messages because the contexts are different, and while the former may be deceptive, the latter is certainly not so.

9

Further, unlike in *Phillips*, the debtor picked this particular fight. Even if the debtor is *pro se*, to grant the debtor the breadth of protection that drove the *Phillips* decision would be manifestly unfair. The debtor must certainly be charged with greater responsibility in prosecuting the bankruptcy case which it commenced, and the creditor should be afforded its day in court in response to the debtor's actions. While it would be unfair to allow the creditor to do whatever it pleases as a result of the debtor's actions, it would be more unfair to say that the creditor may do nothing at all in response.

While there are other differences (the existence of trustees, for example), those have more than ably been set forth in previous opinions of this court and others. *eCast Settlement Corp.*, 2015 WL 494626, at *3-4; *Murff*, 2015 WL 3690994, at *5; *LaGrone*, 525 B.R. at 425-26; *see also Perkins v. LVNV Funding, LLC and Resurgent Capital Services (In re Perkins)*, 533 B.R. 242, 261 (Bankr. W.D. Mich. 2015) (including in its analysis Seventh Circuit law extant at the time of decision); *Broadrick v. LVNV Funding LLC (In re Broadrick)*, 532 B.R. 60, 73 (Bankr. M.D. Tenn. 2015) (discussing at length that this is a debtor-initiated proceeding, among other factors).

It is therefore this court's belief that it would be wrong to overly apply *Phillips* to the filing of proofs of claim in bankruptcy. It is equally wrong to conclude that the creditor has no claim to file simply because the debt is time-barred.

        b.        Holders of Time-Barred Debts Are Creditors with Claims

A "claim" is defined broadly in the Bankruptcy Code as a "right to payment, whether or not such right is ... disputed ...." 11 U.S.C. § 101(5). There can be no question that creditors holding time-barred debts have claims within this definition. The law recognizes such. In most jurisdictions, time-barred debts remain. *Broadrick*, 532 B.R. at 74; *Mascot Oil Co. v. U.S.*, 42 F.2d 309, 311 (Ct. Cl. 1930), *aff'd*, 282 U.S. 434 (1931) ("[T]he statute of limitations or other bar against a remedy for the collection of a debt does not extinguish the liability therefor."). Such is the same in Illinois, and has been for over 150 years. *Fleming v. Yeazel*, 379 Ill. 343, 345 (Ill. 1942) ("[T]he statute of limitations controls the remedy for recovery of the debt, but the debt remains the same as before, excepting that the remedy for enforcement is gone.") (*citing Keener v. Crull*, 19 Ill. 189 (Ill. 1857)); *La Pine Sci. Co. v. Lenckos*, 95 Ill. App. 3d 955, 958 (Ill. Ct. App. 1981) ("Statutes of limitation affect the remedy by limiting the period within which legal action may be brought or remedies may be enforced; they bar the right to sue for recovery but do not extinguish the debt which remains as before."). This has has been recognized by the District Court in this jurisdiction, which describes the concept as "unremarkable." *Stepney v. Outsourcing Sols., Inc.*, No. 97C5288, 1997 WL 722972, at *4 (N.D. Ill. Nov. 13, 1997) (*citing Yeazel* and *Lenckos*).

It is not just unremarkable, but consistent in other areas of Illinois law. Illinois law, for example, separately classifies statutes of limitations (which do not extinguish debts) from statutes of repose (which do extinguish debts). *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61, 857 N.E.2d 229, 237 (2006). As the Supreme Court of Illinois stated in *DeLuna*,

> a statute of repose differs from a statute of limitations in that a statute of limitations governs the time within which lawsuits may be commenced after a cause of action has accrued, *while a statute of repose extinguishes the action itself* after a fixed period of time, regardless of when the action accrued.

10

*Id.* (emphasis added); *see also Folta v. Ferro Eng'g*, 2015 IL 118070, ___ N.E.2d ___ (2015) ("In contrast to a statute of limitations, which determines the time within which a lawsuit may be brought after a cause of action has accrued, a statute of repose extinguishes the action after a defined period of time, regardless of when the action accrued."). The Illinois statute in question here is unquestionably entitled "Five year limitation" and states, in part, that "[A]ctions on unwritten contracts, expressed or implied, ... shall be commenced within 5 years next after the cause of action accrued."). 735 ILCS 5/13-205; *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 36 , ___ N.E.2d ___ (2015) (referring to this section as the "five-year statute of limitations."); *see also Halperin v. Halperin*, 750 F.3d 668, 671 (7th Cir. 2014) (same).

In addition, the continuing nature of the time-barred debt is, in part, the source of the legal principle of "moral consideration." E. Allan Farnsworth, Contracts § 2.8, p. 57 (3d ed. 1990). The "doctrine of 'moral consideration' makes enforceable, without any fresh consideration, the promise of a debtor to pay a debt that is no longer enforceable (maybe because the statute of limitations has run) ...." *Eastern Trading Co. v. Refco Inc.*, 229 F.3d 617, 625 (7th Cir. 2000) (citing to a later publication of the third edition of Farnsworth); Restatement (Second) of Contracts, § 82(1) ("A promise to pay all or part of an antecedent contractual or quasi-contractual indebtedness owed by the promisor is binding if the indebtedness is still enforceable or would be except for the effect of a statute of limitations."); *id.*, § 86(1) ("[A] promise to perform all or part of an antecedent contractual or quasi-contractual duty ... is binding if the antecedent duty was once enforceable by direct action, and is either still so enforceable or would be except for the effect of a statute of limitations."). The reason such a promise is enforceable is that the "debt is, but for the statute of limitations, enforceable." *Maddox v. Robertson (In re Prejean)*, 994 F.2d 706, 708 n.4 (9th Cir. 1993). Moral consideration is a viable legal doctrine in Illinois, and may in fact be used as a defense to a fraudulent conveyance action. *Tcherepnin v. Franz*, 457 F. Supp. 832, 838 (N.D. Ill. 1978) (citing to Illinois state cases); *accord Prejean*, 994 F.2d at 708; *Ehrenberg v. Tenzer (In re Heartbeat of the City, N.W., Inc.)*, Case No. CC–05–1179–PaJK, 2006 WL 6810939 at *5 (B.A.P. 9th Cir. Apr. 5, 2006) ("'[M]oral consideration' could constitute reasonably equivalent value and that the bankruptcy court's refusal to avoid the transfer was proper.").

Further, the law in Illinois is such that the statute of limitations period may be restarted by conduct of the debtor. *See, e.g., Woodford County Nat. Bank of El Paso v. Conklin*, 292 Ill. App. 53, 59, 10 N.E.2d 864, 867 (3d Dist. 1937) ("Here we have the admission that the debt is due and unpaid coupled with the assignment in payment thereof, which was sufficient to remove the bar of the statute of limitations."). This, too, is consistent with the continuation of the debt.

Last, of course, is the right to payment itself. What further is necessary to establish a creditor's right to payment, than, well, a right to payment? The law is clear that, even on a time-barred debt, the creditor has a right to keep a payment made after the bar. It is tautological that a creditor in possession of the unappropriated funds of its debtor may use those funds to satisfy the debtor's debts. The Supreme Court stated as much as 175 years ago, *see Gratiot v. U.S.*, 40 U.S. 336, ___ (1841) ("It is but the exercise of the common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him."), and this common law right is preserved in bankruptcy. *See* 11 U.S.C. § 553.

When a statute of limitations is in play, the debt nonetheless remains, and the result is no different. The Restatement of Contracts provides an on-point example for this: "A owes B two

11

debts, *one of which is barred by the Statute of Limitations*. A makes a payment without manifesting any intent that it shall be applied to one rather than the other. The payment is insufficient fully to satisfy either debt. *B can apply the payment in whole or in part to the barred debt*; but if the debt is not fully paid thereby, the bar of the Statute is not removed as to the remainder." Restatement (First) of Contracts, § 387, Illustration 8 (emphasis added).

The Seventh Circuit recognized this fact post-*Phillips* when it considered the FDCPA implications of lesser collection activity than lawsuits on time-barred debts. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014). In *McMahon*, the Seventh Circuit explicitly stated that "[w]e do not hold that it is automatically improper for a debt collector to seek re-payment of time-barred debts …." *Id.* Implicit in this statement is that there is, in fact, a right to payment upon which to collect. The whole point of the FDCPA itself as well as the myriad of cases refining the rights of creditors to collect on time-barred debts is the existence of those rights. To hold otherwise would be, for lack of a better word, nonsense.

Worse, to hold otherwise would be to create a federal scheme of property rights that differs from the underlying state ones. The Supreme Court has made clear that the property rights at issue in bankruptcy are created by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). It is state law that chose not to extinguish these rights, and federal law has no business reading away the existence of the rights because they are small,[10] they have no immediate access to the courts or their exercise otherwise offends the sensibilities of the judge. Can or should a bankruptcy judge, with one flourish of his or her pen, wish away these rights and stop these creditors from being heard? The answer must be no.[11]

    c.   The Bankruptcy Code Anticipates Time-Barred Claims

As noted above, these questions are ones of state law, *Butner*, 440 U.S. at 55, but the rights underlying the questions are refined by bankruptcy law once a bankruptcy has been commenced. Once state law establishes a right to payment, the Bankruptcy Code permits such claim to be filed. 11 U.S.C. § 501(a) ("A creditor … may file a proof of claim."); 11 U.S.C. § 101(10)(A) ("The term 'creditor' means – [an] entity that has a claim against the debtor …."); 11 U.S.C. § 101(5) (A "claim" is a "right to payment, whether or not such right is … disputed …."). To reiterate the point made previously, nothing in the foregoing or otherwise in the Bankruptcy Code stands for the principle that a claim must have an immediate right of access to the courts. Those courts that have so held have created that condition out of whole cloth.[12]

---

[10] With apologies to Dr. Seuss, a property right is a property right, no matter how small.

[11] To be clear, the court is sympathetic to the Debtor and others like him. Abusive debt collection is clearly a problem in the United States. But the problem cannot be solved by conveniently overlooking the legal rights of parties.

[12] The court recognizes that "slippery slope" arguments are, in essence, logical fallacies. Nonetheless, the question must be asked: Will we read into other aspects of the Bankruptcy Code a requirement that a claim must have an immediate right of access to the courts when state law says nothing of the kind? What then, will we do with other springing interests or remainders? Will we start treating claims differently based upon our perceptions of the claims, rather than on the existence of a legal right?

The preceding analysis makes clear that these creditors have claims. They are, therefore, entitled to assert them. The existence of the claim does not, however, guarantee a recovery, of course, as the Bankruptcy Code, Bankruptcy Rules and Official Forms apply conditions on how claims are handled. These conditions include those that apply to time-barred claims, which are anticipated and handled under all of the foregoing. *See, e.g.*, 11 U.S.C. § 502(a)(1) (a claim may be disallowed if the "claim is unenforceable against the debtor and property of the debtor ..."); Fed. R. Bankr. P. 3001(c)(3) (requiring, in part to help identify time-barred claims, the inclusion of detailed information in relation to open-end or revolving consumer credit agreements); Fed. R. Bankr. P. 3001(c) advisory committee's note to 2012 Amendment II; Official Form 10 (including instructions on how to comply with Bankruptcy Rule 3001(c)(3)).

While it may be the case that a time-barred claim will be disallowed, it may also be the case that it will not be. The end result is not clear unless and until the matter is heard by the court. But it is the court that is uniquely positioned to make those determinations, and it may only do so if the creditor is not prevented from asserting its claim. Unlike the trial court facing a time-barred complaint, the bankruptcy court's function is focused on just such issues. These decisions must be made by the bankruptcy court, as with those regarding the sufficiency of an FDCPA claim, on a case-by-case basis.

                d.        Nothing Has Been Alleged that Implicates the FDCPA

To sum up, therefore, it is clear to the court that Cavalry and other similar situated creditors have claims and are entitled to file proofs of claim. The Bankruptcy Code will handle such claims when filed. That begs the question that, by asserting its claim and doing nothing more, has Calvary violated the FDCPA? The answer has to be no.

The filing of a Proof of Claim is not *per se* exempt from the FDCPA. The court eschews such a holding. Instead, the court agrees with the courts in *Broadrick* and *Perkins*, as well as the courts within this jurisdiction that have considered the issue, that the filing *may* constitute a violation, and it may not. *Perkins*, 533 B.R. at 262-63; *Broadrick*, 532 B.R. at 73. This requires the court to look to the FDCPA itself.

> The FDCPA prohibits "false, deceptive, or misleading representations or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and "unfair practices"—"unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.3. The applicable sections provide a list of unlawful conduct without limiting the general application of each section's broad prohibition of "false or misleading representations" and "unfair practices." *Id.* §§ 1692e, 1692f. "Thus section 1692e forbids both '[t]he false representation of ... the character, amount, or legal status of any debt,' § 1692e(2), and the 'threat to take any action that cannot legally be taken,' § 1692e(5), and section 1692f(l) prohibits '[t]he collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law.'"

*Broadrick*, 532 B.R. at 73.

The court can find nothing "false, deceptive, or misleading" in the filing of Cavalry's Proof of Claim. Nor is the filing of the Proof of Claim by Cavalry "unfair or unconscionable" under the

13

facts alleged in the Complaint. There has been no false representation or threat. The Proof of Claim does not disguise the fact that the debt is old. Quite the contrary. By complying with the Bankruptcy Rules, Cavalry has made it abundantly clear that a defense to the claim may exist. In short, Cavalry has done nothing other than what it is entitled to under the Bankruptcy Code.

The same logic applies to the Debtor's Bankruptcy Rule 9011 and fraud allegations. While it is possible that the filing of a proof of claim might constitute a sanctionable fraud on the court, the mere filing of a proof of claim on a time-barred claim cannot be deemed to be such a fraud. The Bankruptcy Code anticipates such filings and handles them appropriately.

As in *Broadrick*, the Debtor's Complaint does not include situations where additional factual or legal circumstances have been alleged that would cause the FDCPA or Bankruptcy Rule 9011 to apply. But because such situations are possible even where the Bankruptcy Code and Bankruptcy Rules have been complied with (the FDCPA is not precluded), the dismissal of this matter will be without prejudice as to Counts I and II of the Complaint.

    e.  A Final Note on the Fifth Amendment

Though not stressed in the briefing by the parties, at the court's direction, a large part of the argument on the Motion to Dismiss went to due process considerations. The court is troubled by those courts that have found that the filing of a proof of claim on a time-barred debt is *per se* a violation of the FDCPA.

The Fifth Amendment to the United States Constitution contains what is commonly referred to as the Takings Clause, which states that "[n]o person shall … be deprived of … property, without due process of law." U.S. CONST. amend. V. The FDCPA appears to be a carefully drafted to not foreclose the collection rights of time-barred debts, for good reason. That would arguably be a taking under the Fifth Amendment.

As the Seventh Circuit has stated:

> Procedural due process requires a two-step analysis. First, we consider whether the plaintiff was deprived of a constitutionally protected interest in life, liberty, or property. If he was, we then determine what process he was due with respect to that deprivation. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

*Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).

As to the first question, just this year the Supreme Court confirmed that the taking of personal property is subject to the same level of scrutiny as the taking of real property. *Horne v. Dept. of Agriculture*, ___ U.S. ___, 135 S. Ct. 2419, 2427 (2015) ("Nothing in [the history to the Fifth Amendment] suggests that personal property was any less protected against physical appropriation than real property."). Such property includes contract rights. *Lynch v. U.S.*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States.") (applying Fifth Amendment protection to a taking of those rights). In *Horne*, the Court restated its prior position that compensation was also required for a "regulatory taking"— a restriction on the use of property that went "too far." *Horne*, ___ U.S. ___, 135 S. Ct. at 2427

14

(citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)). As the Court stated "the test for how far was 'too far' require[s] an 'ad hoc' factual inquiry. That inquiry require[s] considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.* (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)); *see also U.S. v. Willow River Power Co.*, 324 U.S. 499 (1945).

Here, there is no question that an industry has sprung up around the acquisition of and realization upon time-barred debt. Calvary is clearly a market actor in that industry with protectable economic expectations. That industry has just as clearly relied upon the nature of the time-barred debt discussed above (*e.g.*, the continuing nature of the debt and the ability to accept payment on it). Implicit is that reliance is in part due to the fact that the FDCPA stopped short of extinguishing time-barred debts. There is no question, therefore, that Cavalry's property rights are protected by the Fifth Amendment.

As to what level of process is required, as noted above, the FDCPA appears to carefully tread the line between providing a remedy to aggrieved debtors and taking away a property right of creditors. As noted above, for example, the FDCPA bars no collection and extinguishes no debt. The only remedy afforded consumers is monetary. *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) ("[A]ll private actions under the Fair Debt Collection Practices Act are for damages."); *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 545 (N.D. Ill. 2012) ("Injunctive relief is not available to private litigants under the FDCPA."); *Gammon v. GC Services Ltd. P'ship*, 162 F.R.D. 313, 319-20 (N.D. Ill. 1995) (collecting cases stating that injunctive and equitable relief are not available under the FDCPA).

Thus, as it stands, it is only under the Bankruptcy Code that otherwise unextinguished, time-barred claims can be extinguished. This means, quite clearly, that creditors such as Cavalry have something to lose in bankruptcy. Had there been no bankruptcy, their rights – such as they are – would be preserved. Unlike the FDCPA, bankruptcy and the bankruptcy discharge change the underlying rights. And as noted above, the Bankruptcy Code provides a process for that to happen, one where creditors assert their claims and objections are determined by the court. *Grand Pier Ctr. LLC v. ATC Group Services, Inc.*, Case No. 03cv7767, 2007 WL 2973829, at *3 (N.D. Ill. Oct. 9, 2007) (observing that a bankruptcy discharge is a taking, but one with due process) (citing *Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir. 2007)).

But the Debtor and others like him want the court to adopt a *per se* rule that effectively bars these claims from bankruptcy relief. Such a holding would create a barrier to creditors such as Cavalry being heard in the very process under which their property rights may be extinguished. While it is true that they might otherwise be heard, *see, e.g.*, 11 U.S.C. § 1109(b) (party in interest's right to be heard in chapter 11 cases), to deny such creditor a voice on the is sue most directly bearing on the creditor, its claim, is more than problematic.[13] That has every indication of being a

---

[13] Further, should the court accept the Debtor's general contention that the mere filing of a proof of claim is a violation of the FDCPA, the court is reasonably confident that it would not be long before debtors such as the Debtor attempt to extend the holding to the general right to be heard for such creditors.

denial of due process, the very process to which the creditor is due for the deprivation. *Porter*, 93 F.3d at 305.[14]

Remember, for a moment, that the Bankruptcy Code and the FDCPA were each initially enacted by Congress in 1978. But neither, as written, achieves the result the Debtor here wishes the court to create. Is it too great a leap presume that the gap is intentional; to credit Congress with an understanding of and respect for the Fifth Amendment in adopting the two acts?

In other words, what the Debtor asks this court to do is close the loop on time-barred debts in a way that Congress did not do and perhaps could not have done, for fear of violating the Takings Clause. Would a similar violation occur if the courts were to be the ones doing the taking? The courts are, after all, as much an element of the State as Congress is. Certainly if what the Debtor asks for would be a violation of the Fifth Amendment if provided for by Congress, this court (and other trial courts at the federal level) should be very cautious in providing.

## CONCLUSION

For all of the foregoing reasons, the court concludes that the Motion to Dismiss can and should be granted as to all counts of the Complaint.

A separate order will be issued, concurrent with this Memorandum Decision, granting the Motion to Dismiss, with prejudice as to Count III and without prejudice as to Counts I and II.

Dated: January 5, 2016

Timothy A. Barnes
United States Bankruptcy Judge

---

[14] Further, the frustration of a specific property right or interest excessively may, in and of itself, be a taking. *E. Enterprises v. Apfel*, 524 U.S. 498, 541-42 (1998).